Church, Ch. J.
This case is within the exception contained in the seventh section of chapter 580 of the Laws of 1872, it being for repaving a street which had once been paved and paid for by an assessment. The “ legal irregularity ” complained of is that notice of the completion of the estimate and assessment required to be published by chapter 171 of the Laws of 1841 was not published in the newspapers designated, according to chapter 383 of the Laws of 1870. Section one of the last act, which was the annual tax levy for that year, provides that all city advertising shall be published in not more than seven daily and six weekly newspapers “ to be designated from time to time by the mayor and comptroller of said city,” and prohibits the payment to any other newspaper for such advertising. It is stated in the case that the mayor and comptroller never designated any newspaper under the act of 1870, and that the notice in question was published in certain newspapers designated under previous acts of the legislature; and it is claimed that the act of 1870 abrogated all previous designations of newspapers, and that no legal publication could be made after the passage of that act until the mayor and comptroller acted by making the selections of newspapers authorized by it. This result seems to be justified by the opinion of the learned judge *63 In re Smith (52 N. Y., 526). The decision in that case might well have been made upon the ground stated in the opinion that “The New York Leader was one of the papers designated in 1868, and it appears that these proceedings were not published in that. It is averred in the petition that they were nowhere published as required by law; and there is no proof that they were published anywhére.”
The opinion expressed as to the effect of the act of 1870, even if it embraced the question in this case, which is at least doubtful, was not indispensable to the decision, and may not for that reason have attracted the attention which it otherwise would. I should be reluctant to review a decision ■ deliberately made by this court, unless the error was clear and palpable; but an expression of opinion upon a point, although pertinent in one aspect of the case, but not necessary to the decision, stands upon a somewhat different footing. Such an expression may not have received that affirmative concurrence of the members of the court, which is always implied as to those views which are necessarily involved in the conclusion arrived at. As the notice in this case was published in all official papers previously designated, we are at liberty, I think, to consider the effect of the act of 1870 upon the proceedings, without impairing the decision In re Smith. The construction claimed for the act of 1870 is that it abolished all official papers appointed under previous laws; and until the mayor and comptroller made new designations under that act, official notices could not be lawfully published. It would follow that assessments could not be perfected; that all new improvements were practically suspended not only, but the city was prevented, after an improvement had been lawfully authorized, from proceeding to levy the expense thereof upon those who by law were liable to pay it. I cannot bring my judgment to favor such a construction. It is clear that , this was not the intent of the legislature; and the language used does not require it. The act of 1870 must be read in connection with the previous acts in order to *64 understand its purpose and object; and the language used must receive such a construction, if possible, as will effectuate that object. It is an old and sensible rule that a construction which leads to absurd results should be avoided, if practicable.
The act of 1841 made it the duty of all commissioners and assessors authorized to make an assessment for any improvement to publish a notice of the completion of the same in two newspapers to be selected annually by the common council. In Laws of 1863, chapter 407, the power to select papers for all official advertising was transferred from the common council to the mayor and comptroller, who were required to designate ten papers in all for this purpose. This was a provision in the tax levy of that year, and inserted in connection with an appropriation for official printing. Every tax levy since, including that of 1870 (except 1864 and 1869), has contained some provision on the subject of selecting or continuing the selection of newspapers to publish official notices ; and in every case the principal purpose appears to have been to restrict and limit the expenses for this service. In 1^865 the papers before designated by the mayor and comptroller were expressly continued as official papers. In 1866 the same papers were continued, but thereafter the corporation counsel was to be added to the mayor and comptroller to- make the' designations, but the appropriation was confined to “ advertising for the common council.” In 1867 the comptroller alone was authorized to select papers to publish the proceedings of the common council. In 1868 the mayor and comptroller were authorized to select papers in which to publish such proceedings. The act of 1870 did not change the officers who were to make the selections; and whether it diminished the number of newspapers does not clearly appear. The most noticeable change from previous laws is that it did not require that notices should be published in all the papers. They were to be published in “ not more ” than thirteen, but this change is consistent with the continuance of previously designated papers. But the language of the act is said- to be conclusive in favor of the construction claimed. The language is: “All *65 advertising hereafter * * * shall be published in not more than seven daily and six weekly newspapers, * * * tobe designated from time to time by the mayor and comptroller,” etc. The word “ hereafter ” refers to the publication and not to the designation. If the words “ to be ” had been omitted, publication in any of the papers previously designated by the mayor and comptroller would have been clearly sufficient. Does the use of those words imperatively require subsequent action on the part of these officers in order to make any publication lawful? I think not. The legislature evidently intended to confer the power upon the mayor and comptroller to change the selection of newspapers after the passage of the act “ from time to time,” in their discretion, which was a new power, and the words “ to be”-may have been deemed necessary to accomplish that intent. Without them the act might be construed as referring only to prior designations ; and the expression “from time to time,” maybe held to limit and qualify the force which might otherwise be given to the words “ to be.” Another reason for the recognition of existing designations is that there was not the slightest necessity for interfering with them.
While conferring unlimited power upon the same officers who had made-the selections to change them at their pleasure, it is unreasonable to infer that it was intended to require those officers to go through the affirmative formality of a redesignation unless a change was contemplated. The duty is not expressly enjoined, as was done by former acts when affirmative action was contemplated. The act of 1863 declared that the mayor and comptroller “ shall designate,” etc. By the act of 1866 the comptroller “ is hereby directed to select,” and by the act of 1868 the mayor and comptroller “ are hereby directed to select.” There is no such direction in the act of 1870. An existing power is recognized and enlarged. The fact that these officers omitted to make designations after the passage of the act, shows how it was regarded by them, and is in harmony with these views. If this was the only act on the subject the question would *66 be different, but in regarding all the statutes in pari materia as we must, it cannot be supposed that the annual restrictions upon the expenditure were intended to affect the validity of pending proceedings or to interrupt their progress. It may be conceded that the language of the statute is somewhat ambiguous, but we must give it a reasonable and beneficial construction.
Chancellor Kent, in his Commentaries, says “The reason and intent of the law-giver will control the strict letter of the law, when the letter would lead to palpable injustice, contradiction and absurdity.” (Kent’s Com., 462.) And he lays down the general rules for construing statutes, derived, as he says, “ from the sages of the law,” that, “ when the words are not explicit, the intention is to be collected from the context, from the occasion, and necessity of the law, from the mischief felt, and the objects and remedy in view, and the intention is to be taken or presumed according to what is consonant to reason and good discretion.” (Id.) There are exceptions and qualifications, but these rules are pertinent to this case.
The petitioners have no just reason to complain. The act of 1841 required the notice to be published in only two papers. It was published in fourteen, including all existing official papers. By the act of 1870 a publication in one was sufficient.
We think that the statute of 1841 was substantially complied with. These views render it unnecessary to consider the question whether that statute is directory or mandatory—a question often difficult of satisfactory solution—or ■the question whether, if directory, non-compliance with its terms is a “ legal irregularity,” within the meaning of the statute of 1858, authorizing these proceedings; and we express no opinion upon these points.
The order must be affirmed.
All concur; Folger and Rapallo, JJ., in result.
Order affirmed.